**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**WILLIE SETH CRAIN, JR.,**
Petitioner,

Death Penalty Case
**EXECUTION SCHEDULED DECEMBER 10, 2026, AT 6:00 PM**
Case No. 8:26-cv-03503

v.

**RICHARD COMERFORD**,
Secretary, Florida Department of Corrections,
Respondent,
&

**JAMES UTHMEIER**,
Attorney General, State of Florida, Additional Respondent.
_________________________________/

## PETITIONER'S EMERGENCY MOTION TO STAY EXECUTION

**/s/ Melody J. Jacquay**
MELODY JOY JACQUAY-ACOSTA
Florida Bar No. 1010248
Assistant CCRC-M
Jacquay@ccmr.state.fl.us
**/s/ Colleen Monroe**
COLLEEN ANN MONROE
Florida Bar No. 1036189
Assistant CCRC-M
Monroe@ccmr.state.fl.us

**/s/ Chelsea Chitty**
CHELSEA SUE CHITTY
Florida Bar No. 1045375
Assistant CCRC-M
Chitty@ccmr.state.fl.us

Law Office of the Capital Collateral Regional Counsel – Middle Region
12973 N. Telecom Parkway Temple Terrace, FL 33637
Phone: 813-558-1600
support@ccmr.state.fl.us

## INTRODUCTION & NATURE OF EMERGENCY

The Petitioner, Willie Seth Crain, Jr. ("Crain"), by and through undersigned counsel, respectfully submits this motion for a stay of execution pending the disposition of his Petition for a Writ of Habeas Corpus, which was timely filed on November 17, 2026. Crain is currently incarcerated at Florida State Prison in the State of Florida under a sentence of death. The State of Florida has scheduled the execution of Crain for Thursday, December 10, 2026, at 6:00 PM ET, thus a ruling a necessary by such date. The relevant facts were presented in Crain's Petition under each ground and are hereby incorporated by reference into this motion in support for a grant of a stay of execution. The citations to the record will be in accordance with the Florida Supreme Court's record on appeal.[1]

## STANDARD FOR A STAY OF EXECUTION

Under 28 U.S.C. § 2251(a)(1), "[a] justice or judge of the United States before whom a habeas corpus proceeding is pending, may, before final judgment or after final judgment of discharge, or pending appeal, stay any proceeding against the person detained in any State court or by or under the

1 References to the trial record on appeal will be referred to as R[volume number]/[page number]. The postconviction record will be referred to as PC/[page number].

authority of any State for any matter involved in the habeas corpus proceeding." Per 28 U.S.C § 2251(a)(2), "a habeas corpus proceeding is not pending until the application is filed." Thus, since Crain has filed an application in this Court, a habeas corpus proceeding is pending, and this Court has the authority to stay the execution.

The Supreme Court has stated that, while the statute grants federal courts the power to stay state court action, it "does not mandate entry of a stay, but dedicates the exercise of stay jurisdiction to the sound discretion of a federal court." *McFarland v. Scott*, 512 U.S. 849, 858 (1994). Thus, this Court must still determine if a stay of execution is appropriate under the circumstances. *See Nken v. Holder*, 556 U.S. 418, 433 (2009). The Supreme Court has found that courts should consider four factors when determining whether to enter a stay:

> "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."

*Id.* at 426 (citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

The Court further found that "[the] first two factors of the traditional standard are the most critical." *Id.* at 434. Demonstrating "mere possibility"

that any of the factors will be met is insufficient. *Id.* The Court has also stated that "[l]ast-minute stays should be the extreme exception, not the norm, and 'the last-minute nature of an application' that 'could have been brought' earlier, or 'an applicant's attempt at manipulation,' 'may be grounds for denial of a stay.'" *Bucklew v. Precythe*, 587 U.S. 119, 150 (2019) (quoting *Hill v. McDonough*, 547 U.S. 573, 584 (2006)).

In this case, though Crain's petition and this motion come after Crain's death warrant was signed, it could not have been brought earlier nor is it an attempt at manipulation. *Crain's petition for habeas review would have properly come before this Court regardless of whether or not Florida's governor signed Crain's execution warrant.* Crain's petition arises from a final State court decision that was issued on September 8, 2026, barely two months before the issuance of his death warrant. Crain would submit, as will be discussed below, that the present Petition is proper and the time period for filing has not passed. This case is one of those "extreme exceptions" contemplated by the Supreme Court.

As Crain will be executed if a stay is not entered, factor two, whether the applicant will be irreparably harmed absent a stay, is clearly met. While the State's, victims' and public's interest in conclusive litigation is certainly

important, Crain would submit that it does not outweigh the irreparable harm of his execution, particularly as he has a strong likelihood of succeeding on the merits. Further, the public also has an interest in executions being carried out in accordance with law and the Constitution. The likelihood of success on the merits of the habeas petition is explored below. Ultimately, both factors one and two, "the most critical," will weigh heavily in favor of granting a stay.

**STANDARD OF REVIEW FOR THE HABEAS PETITION**

Under 28 U.S.C. § 2254(a), federal courts have the power to issue a writ of habeas corpus to any "person in custody pursuant to the judgment of a State court," so long as that person can show "he is in custody in violation of the Constitution." The standard of review and deference provided to the State court under § 2254 turn on whether the claims were adjudicated on the merits. A claim is adjudicated on the merits "only if it was 'delivered after the court…heard and *evaluated* the evidence and the parties' substantive arguments.'" *Johnson v. Williams*, 568 U.S. 289, 302 (2013) (quoting Black's Law Dictionary 1199 (9th ed. 2009)). The Court found that "merits is defined as '[*t*]*he intrinsic rights and wrongs of a case* as determined by *matters of substance*, in distinction from matters of form.'" *Id.* (quoting Webster's New International Dictionary 1540 (2d ed. 1954)).

If the claim was adjudicated on the merits, § 2254(d) applies, and relief shall be granted only if this Court concludes the adjudication of the claim by the state court "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

If the state court explicitly did not adjudicate the claim on the merits, § 2254(d) does not apply and the federal court may proceed directly to de novo merits review under § 2254(a). *See Rompilla v. Beard*, 545 U.S. 374, 390 (2005) ("Because the state courts found the representation adequate, they never reached the issue of prejudice, and so we examine this element of the *Strickland* claim de novo…."); *Brumfield v. Cain*, 576 U.S. 305, 323 (2015) ("[T]he state trial court never made any finding that Brumfield had failed to produce evidence suggesting he could meet this age-of-onset requirement. There is thus no determination on that point to which a federal court must defer in assessing whether Brumfield satisfied § 2254(d).") Under de novo review, the federal court decides the issues without deference to any legal conclusion or assumption made by the prior court. While the court may refer

to the lower court's record to determine the facts, it will rule on evidence and matters of law without deferring to the lower court's finding.

As an initial matter, in order for the federal court to review the claims, §§ 2254(b) and (c) require that a petitioner exhaust all remedies available to him in state court. The State court had full and fair opportunity to address and resolve these claims, thus, Crain has met the exhaustion requirement. The factual and theoretical bases of Crain's claims were presented in state court and are the same as those before this Court.

Petitioners are required to have fairly presented their federal claims to the State court before raising them in federal court. *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995). In terms of fair presentment, the petitioner must identify the specific constitutional right violated. *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996). "[I]t is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court." *Id.* at 162-63. The claim raised in federal court must then be the "substantial equivalent" of the claim presented in state court. *Picard v. Connor*, 404 U.S. 270, 278 (1971). A petitioner seeking to raise a claim as a federal issue in state court does so by "citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on

federal grounds, or by simply labeling the claim 'federal.'" *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). The grounds presented in the Petition and this memorandum were fairly presented to the State court and are suitable for this Court's review.

Further, "[a] federal habeas court will not review a claim rejected by a state court 'if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" *Beard v. Kindler*, 558 U.S. 53, 55 (2009) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). The Court has found that "[it] is, of course, 'incumbent upon this Court ... to ascertain for itself ... whether the asserted non-federal ground independently and adequately supports the judgment.'" *Michigan v. Long*, 463 U.S. 1032, 1038 (1983) (quoting *Abie State Bank v. Bryan*, 282 U.S. 765, 773 (1931)). The state ground "may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits." *Walker v. Martin*, 562 U.S. 307, 315 (2011).

This Court may presume the absence of an independent and adequate state ground for a state court decision when the decision "fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear

from the face of the opinion." *Long*, 463 U.S. at 1040-41; *see also Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001) (*citing Card v. Dugger*, 911 F.2d 1494 (11th Cir. 1990) ("[T]he last state court rendering a judgment in the case must clearly and expressly state that it is relying on state procedural rules to resolve the federal claim without reaching the merits of that claim," . . . "the state court's decision must rest solidly on state law grounds, and may not be 'intertwined with an interpretation of federal law,'" . . . and "the state procedural rule must be adequate; *i.e.*, it must not be applied in an arbitrary or unprecedented fashion.").

The Florida Supreme Court dismissed Crain's present claims as moot and cited the Florida Supreme Court case *Casiano v. State,* 310 So. 3d 910 (Fla. 2021). In *Casiano*, the defendant sought only to challenge his completed prison sentence without challenging his underlying conviction. *Id.* at 911. The Florida Supreme Court held that a defendant's potential designation as a prison releasee reoffender, which would subject him to minimum-mandatory sentencing if he was convicted of certain crimes, was an insufficient collateral legal consequence to preclude dismissal as moot where he had already completed his sentence. *Id.* at 912. It stated that it "ha[s] defined and issue moot as 'when the controversy has been so fully resolved that a judicial

determination can have no actual effect'" and noted that it "ha[s] recognized an exception to this general rule for situations in which 'collateral legal consequences that affect the rights of a party flow from the issue to be determined.'" *Id.* at 913 (quoting *Godwin v. State*, 593 So.2d 211, 212 (Fla. 1992)). It stated that "in contrast to an underlying conviction, a sentence generally cannot be challenged after it has been fully served and expired because 'any sentencing issue is moot thereafter.'" *Id.* (quoting *Raines v. State*, 14 So, 3d 244, 246 (Fla. 2d DCA 2009)).

By citing this case, the Florida Supreme Court appeared to find that since Crain was resentenced on Count Two to false imprisonment, which carries a statutory maximum of five years in prison, and he had already served more than five years in prison, his sentence on that count is complete, and thus, his claims are moot. Mootness in these circumstances cannot be determined without addressing the federal claims raised by Crain. Crain argued that the trial court violated the Supreme Court case *Magwood v. Patterson*, 561 U.S. 320 (2010) when it resentenced him nunc pro tunc on Count II. As will be discussed below, under *Magwood*, Crain's resentencing was a new judgment and sentence, he is entitled to new federal habeas review. The case <u>cannot</u> be moot if Crain still has federal rights in the case. Thus, in order to have made

the determination that Crain's appeal was moot, the Florida Supreme Court either rejected Crain’s federal claims or ignored his federal claims, nonetheless providing no discussion on the matter. Thus, the resolution of the federal claims is interwoven with the state claims and the Florida Supreme Court's dismissal was not on independent and adequate state grounds.

If this Court finds that the State court adjudicated Crain’s claims on the merits because the Florida Supreme Court *implicitly* analyzed and rejected Crain’s federal claims, § 2254(d) would be applicable as to claim one. Crain will demonstrate below that the Florida Supreme Court's decision on claim one "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," specifically, the Supreme Court's decision in *Magwood*. 28 U.S.C. § 2254(d)(1). He will also demonstrate that his petition is not successive under *Magwood*.

The Florida Supreme Court did not hear or evaluate the substantive merits of Crain's second claim. It stated in *Casiano* that "the mootness doctrine is a 'corollary to the limitation on the exercise of judicial power to justiciable controversies.'" 310 So. 3d at 913 (quoting *Merkle v. Guardianship of Jacoby*, 912 So. 2d 595, 600 (Fla. 2d DCA 2005)). Thus, by dismissing the case as moot

and citing *Casiano*, the Florida Supreme Court explicitly did not reach the merits of claim two. Since the Florida Supreme Court failed to reach the merits of claim two, it is properly before this court for federal habeas review without having been adjudicated on the merits by the Florida Supreme Court and § 2554(d) does not apply. The standard of review for claim two should therefore be de novo.

**CLAIM ONE**

Under § 2244(b)(1), "a claim presented in a second or successive habeas application under section 2254 that was presented in a prior application shall be dismissed." In *Magwood v. Patterson*, the Supreme Court held

> the limitations imposed by 28 U.S.C. § 2244(b) apply only to a "habeas corpus application under section 2254," that is, an "application for a writ of habeas corpus on behalf of a person in custody pursuant to *the judgment* of a State court."

561 U.S. 320, 332 (2010). Thus, since the petitioner was appealing a new judgment imposed after resentencing, § 2244(b)'s limitation did not apply, even where "he could have mounted the same challenge to his original death sentence." *Id.* at 323.

The Eleventh Circuit in applying *Magwood* has distinguished between a mere modification of a sentence and the entrance of a new judgment and sentence. In *Patterson v. Sec'y, Fla. Dep't of Corr.*, the Eleventh Circuit found

§ 2244(b) applied where the sentence was modified solely to remove the requirement that the defendant undergo chemical castration but left his original judgment and term of imprisonment intact. 849 F.3d 1321, 1323 (11th Cir. 2017). In *Insignares v. Sec'y, Fla. Dep't of Corr.*, they found § 2244(b) limitations did not apply where the trial court reduced the term of imprisonment for one count of the defendant's conviction and entered a corrected sentence and new judgment. 755 F.3d 1273, 1281 (11th Cir. 2014). The State argued that petitioner's new § 2254 petition was second or successive where it challenged the undisturbed conviction and raised the same issues as his first petition. *Id.* at 1278. *However*, the Eleventh Circuit held that "there is only one judgment comprised of both the sentence and conviction" and a habeas petition following a new judgment "*is not second or successive, regardless of whether its claims challenge the sentence or the underlying conviction.*" *Id.* at 1281 (emphasis added).

In *Saint-Cyr v. United States*, the Eleventh Circuit applied *Magwood* and *Insignares* where one of petitioner's seven counts and corresponding sentence was vacated in an amended judgment, but his total sentence remained the same. 2024 WL 1759141 (11th Cir. April 24, 2024). It found that "although the district court did not conduct a full de novo resentencing and Saint-Cyr's total

sentence remained the same, the amended judgment nevertheless is the operative judgment that authorizes Saint-Cyr's current confinement." *Id.* at 5. They found that the resentencing "substantively changed the underlying convictions and sentencing package that together form the final judgment by vacating an unlawful conviction and sentence," and "[t]hus the amended judgment in this case constituted a new judgment for purposes of AEDPA." *Id.* *The calculation of the statute of limitations is based off of the new judgment. See also Kleckley v. Florida*, 2025 WL 1806603 at 4 (11th Cir. July 1, 2025) ("Kleckley's resentencing on count 2 was a new judgment even though he received the same term of imprisonment on count 2 after resentencing. And because his post-resentencing judgment constituted a new judgment, it reset the limitations period for Kleckley's entire habeas application, including his undisturbed sentence on count 1.")

The Eleventh Circuit has found that an amended sentence issued nunc pro tunc does not constitute a new judgment for the purposes of § 2244. *Osbourne v. Sec'y, Fla. Dep't of Corr.*, 968 F.3d 1261, 1263 (11th Cir. 2020). In *Osbourne*, the trial court granted petitioner's motion to amend his original 2003 sentence in 2014, removing the 10-year minimum-mandatory on one of his charges, but leaving the overall sentence in place. *Id.* The trial court issued this amendment

nunc pro tunc to the initial sentencing date. *Id.* The Eleventh Circuit found that this was not a new judgment for the purposes of § 2244 since "the date of Osbourne's sentences and convictions remained April 21, 2003." *Id.* at 1266. It stated that the propriety of the nunc pro tunc designation "is a matter best left to the province of the state court." *Id.* at 1267, n. 4.

The Sixth Circuit has also addressed this issue. In *Crangle v. Kelly*, the defendant was sentenced to life imprisonment with parole eligibility after ten years in 2007. 838 F. 3d 673, 675 (6th Cir. 2016). Per the Ohio statute, he also should have been sentenced to five years of supervised post-release control upon his release from prison, but he was not so-sentenced either orally at the sentencing hearing or within the sentencing order. *Id.* In 2010, the trial court entered an order correcting his sentence to include post-release control nun pro tunc to his original sentencing date in 2007. *Id.* at 676. The Sixth Circuit determined that this "was a new judgment that reset the one-year statute of limitations to file a habeas corpus petition." *Id.* at 680. Noting that "[n]unc pro tunc orders are used only 'to correct erroneous records,' *not to 'revise the substance* of what transpired or to backdate events.'" *Id.* (quoting *Kusay v. United States*, F.3d 192, 193 (7th Cir. 1995) (emphasis added). The court found that "[n]o matter the label, the November 2010 order changed the substance of

[the] sentence—and thus amounted to a new judgment." *Id.* It determined that "[a] state court's decision to affix the label nunc pro tunc to an order does not control the federal questions whether the order changes [the] conditions of confinement." *Id.*

A nunc pro tunc order, or "now for then" order, "presupposes a decree allowed, or ordered, but not entered, through inadvertence of the court." *Cuebas y Arredondo v. Cuebas y Arredondo*, 223 U.S. 376, 390 (1912). As the Eleventh Circuit noted in *Osbourne*, "[i]n Florida, '[a] court may enter an order nunc pro tunc to correct the record of an order *[a]ctually made*, which was either entered incorrectly in the court records or not entered at all.'" 968 F.3d at 1266 (quoting *In re Riha's Estate*, 369 So. 2d 404 (Fla. 2d Dist. Ct. App. 1979)) (emphasis added).

In this case, Crain was found guilty by a jury of first-degree murder, count I, and kidnapping with intent to commit homicide, count II, in September of 1999. On November 19, 1999, Crain was sentenced to death as to count I and life imprisonment on count II, to run consecutively. As a result of Crain's direct appeal of his initial conviction, the Florida Supreme Court found that there was insufficient evidence to support count II and "revers[ed] the judgment of guilt of kidnapping in Count II and direct[ed] the trial court on remand to enter

judgment for false imprisonment, and to resentence Crain accordingly." *Crain v. State*, 894 So. 2d 59, 76 (Fla. 2004). On July 23, 2025, Crain was resentenced on Count II to false imprisonment, nunc pro tunc to November 19, 1999, with a new sentence of five years, to run concurrent with his death sentence, under encouragement from the Assistant Attorney General who told the court:

> I will also point out that the reason it's important for the court to sentence him in that manner is *because if he's not sentenced nunc pro tunc, he will then have his opportunity to go back to federal court and it will be as if he has never been to federal court.*

Trans., 4:19-25, Sept 22, 2025. (emphasis added).

The reversal of Crain's original judgment and sentence on count II and his resentencing is not a mere modification as in *Patterson*, but "[r]ather, it substantively changed the underlying convictions and sentencing package that together form the final judgment by vacating an unlawful conviction and sentence," as in *Magwood* and *Insignares*. *Saint-Cyr,* 2024 WL 1759141 at 5. The facts here are very similar to *Saint -Cyr* where only one count of several was vacated and the overall term of imprisonment was not changed but still constituted a new judgment to which § 2244(b) does not apply. *Id*. Thus, Crain's current Petition is not a "second or successive" petition under § 2244(b) and the restrictions therein do not apply. It is his first petition on his new judgment and sentence.

That the trial court issued his resentencing nunc pro tunc should not change this outcome. This Court should look at whether the substance of Crain's judgment and sentence changed, not the label. Otherwise, state courts can simply tack on "nunc pro tunc" to any new judgment and sentence and prevent state prisoners from exercising their federal rights to which they otherwise would be entitled. This case illustrates such a situation. Crain's judgment and sentence on false imprisonment was not originally ordered by the trial court in November of 1999. The trial court at that time did not intend to adjudicate him on false imprisonment and sentence him to five years prison and merely "forget" to enter the correct sentencing order; it explicitly adjudicated and sentenced him to kidnapping with intent to kill and sentenced him to life in prison. Crain's original sentence was not a clerical error, and his new sentence was not "actually made" in November of 1999. The desire to avoid a federal habeas process on the new judgment and sentence does not change that reality.

The reality is that Crain was resentenced on count II to false imprisonment on July 23, 2025. This constituted a new judgment and sentence which was ultimately affirmed by the Florida Supreme Court's dismissal of his claims on September 8, 2026. Crain's situation is *substantively* like those of *Insignares, Saint-Cyr*, and *Kleckley*, and should be treated as such, despite the label of

nunc pro tunc.

Thus, under M*agwood*, *Insignares*, *Saint-Cyr*, and *Kleckley*, Crain's present petition is not successive under § 2244(b). It is further timely under § 2244(d)(1), having been filed within the 1-year period of limitation. Thus, Crain is likely to succeed on the merits of this claim and this Court should enter a stay of execution to properly address the merits.

**CLAIM TWO**

*In re Winship* established proof beyond a reasonable doubt as an essential element of the Due Process Clause of the Fourteenth Amendment. 397 U.S. 358, 368 (1970). In *Jackson v. Virginia*, the Supreme Court held that, under the *Winship* doctrine, a state prisoner is entitled to habeas corpus relief if it is found that upon the evidence adduced at trial, "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." 443 U.S. 307, 317 (1979). The Court reasoned that "a doctrine establishing so fundamental a substantive constitutional standard must also require that the factfinder will rationally apply that standard to the facts in evidence." *Id.* It recognized that "a properly instructed jury may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt" and stated that "such an occurrence has traditionally been deemed to require the

reversal of the conviction." *Id.* The standard thus laid out by the Supreme Court to determine when this occurs "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319.

In the present case before this Court, false imprisonment under §787.02(1)(a), Fla. Stat. (1998), is defined as requiring the confining, abducting, imprisoning or restraining of another person to be "against her or his will." Crain's initial charge of kidnapping under §787.01(1)(a), Fla. Stat. (1998), which the Florida Supreme Court reversed, is defined as requiring the forcible or secret confinement, abduction or imprisonment of another, against that person's will and without lawful authority. Further, the kidnapping must be done with the intent to commit or facilitate the commission of homicide or to inflict bodily harm upon the victim.

In Crain's direct appeal on his initial judgment and sentence, the Florida Supreme Court analyzed the sufficiency of the evidence to support the intent element of count II and found the evidence to be insufficient to support that element, and thus ordered the entry of false imprisonment. *Crain*, 894 So. 2d at 76. However, the court did not analyze and Crain did not challenge, the

sufficiency of the evidence with regard to the element that the forcible or secret confinement, abduction or imprisonment of another be against that person's will, which is a common element in both kidnapping and false imprisonment. The Middle District in its denial of Crain's Motion to Alter or Amend Judgment regarding his habeas petition on his first judgment found that Crain had failed to plead this sufficiency issue and that it was not raised in State court. *Magwood* is clear that Crain may raise this issue in his present petition on his new judgment, even though "he could have mounted the same challenge to his original death sentence." *Magwood*, 561 U.S. at 323.

The State presented no facts to support a finding that there was an abduction of Amanda while she was alive in her home or that Amanda left her home alive. Amanda was last seen asleep in her mother's bed. Two neighbors testified that they observed Crain's truck idling outside of Amanda's trailer, but did not observe either Crain or Amanda. No one saw them leave the house. The State presented evidence that a small amount of Amanda's blood may have been found in Crain's trailer. As the Florida Supreme Court noted, "[a]lthough the DNA blood evidence found on the tissue and the toilet seat in Crain's bathroom independently establishes that Amanda's blood was deposited in Crain's bathroom, it does not establish how much she bled, what caused her to

bleed, or where she was killed." *Crain*, 894 So. 2d at 75. The State's evidence did not and does not establish what happened to Amanda. It impossible to know from the State's evidence whether Amanda left her home alive and thus, whether she was confined, abducted, imprisoned or restrained against her will. This is precisely the circumstance contemplated by *Jackson v. Virginia*, where even a properly instructed jury convicted even though no rational trier of fact could find that this crime was proven beyond a reasonable doubt. The conviction for false imprisonment violated the Eighth and Fourteenth Amendments. As the element requiring that the abduction be against the will of the victim is also an element of kidnapping with intent to harm, which the Florida Supreme Court deemed to be the underlying felony supporting Crain's conviction of felony murder, his conviction on count I also violates the Eighth and Fourteenth Amendments.

Even if it is found that Crain's conviction for Felony Murder in Count I stands despite the above arguments, Crain is still entitled to a new sentencing hearing. The trial court submitted to the jury the aggravator that the murder was committed during the course of a kidnapping. The Florida Supreme Court found that there was insufficient evidence to support a jury finding of kidnapping with intent to kill. As demonstrated above, there is also insufficient

evidence to support kidnapping with intent to harm and false imprisonment. Further, under Florida law, false imprisonment is not an enumerated aggravating circumstance.

The jury was permitted to conclude that they could find "intent to kill" from the facts presented by the State when making their recommendation of the death penalty. They were also permitted to conclude that they could find that the murder occurred during the course of a kidnapping. However, by law, they could not make that determination. It is impossible to know how this aggravator, which was ultimately given great weight by the trial court, factored into the jury's decision to recommend death. It takes too many assumptions to conclude that a jury would still recommend that Crain should be sentenced to death absent this aggravating factor. Thus, his initial sentencing before the new judgment violated the Eighth and Fourteenth Amendments. Crain is likely to succeed on this claim and a stay should be granted.

## CONCLUSION

Crain has demonstrated that he has a strong likelihood to meet the procedural requirements for habeas review. Crain is in custody pursuant to a State court judgment. He has met the exhaustion requirements under §

2254(b) and (c). Crain raised federal issues and fairly presented federal claims in the State court. He has demonstrated that his petition is not "successive or second" under § 2244 and is timely because it concerns a new judgment and sentence pursuant to *Magwood*. He has demonstrated that the State court decision does not rest on independent and adequate state grounds as his federal claim that he has a right to habeas review was not addressed by the Florida Supreme Court, are determinative of whether the case is moot. He has shown that since the Florida Supreme Court did not adjudicate his claims on the merits, he is entitled to de novo review of the claims in his petition. He has further shown that he is likely to succeed on the merits of each of his claims and that he is in custody in violation of the Constitution of the United States.

Pursuant to the above, Crain has demonstrated a likelihood of success on his habeas petition and that the first two factors in determining whether this Court should grant a stay weigh heavily in his favor. Thus, this Court should grant this Motion for Stay of Execution.

/s/Chelsea Chitty
CHELSEA SUE CHITTY
Florida Bar No. 1045375
Assistant CCRC
chitty@ccmr.state.fl.us

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this 17th day of November, 2026 a true copy of the foregoing Motion to Stay has been furnished by electronic mail to the Office of the Florida Attorney General, James Uthmeier, Rick Buchwalter and Jonathan Tannen, Senior Assistant Attorney Generals at Rick.Buchwalter@myfloridalegal.com, Timothy.Freeland@myfloridalegal.com, Jonathan.Tanner@myfloridalegal.com, Stephen.Ake@myfloridalegal.com, Scott.Browne@myfloridalegal.com, Marilyn.Muir@myfloridalegal.com, Heather.Davidson@myfloridalegal.com, Paula.Montlary@myfloridalegal.com, Elizabeth.Bueter@myfloridalegal.com, and CapApp@MyFloridaLegal.com and Florida Department of Corrections, Debra Rescigno, Senior Attorney and Kelly R. Forren, Assistant General Counsel at debra.rescigno@fdc.myflorida.com; kelly.forren@fdc.myfloirda.com; CO-GCCapLit@fdc.myflorida.com; and court-filings@fdc.myflorida.com.

We hereby certify that a copy of this notice will be delivered to Willie Seth Crain, Jr., DOC #096344, Florida State Prison, 23916 NW 83rd Avenue, Raiford, Florida 32083 on November 20, 2026.

Undersigned further hereby certifies that no generative AI was used in the drafting or preparation of this filing.

/s/Chelsea Chitty
CHELSEA SUE CHITTY
Florida Bar No. 1045375
Assistant CCRC
chitty@ccmr.state.fl.us

/s/ Melody J. Jacquay
MELODY JACQUAY-ACOSTA
Florida Bar No. 1010248
Assistant CCRC
support@ccmr.state.fl.us
jacquay@ccmr.state.fl.us

/s/Colleen A. Monroe
COLLEEN ANN MONROE
Florida Bar No. 1036189
Assistant CCRC
monroe@ccmr.state.fl.us

CAPITAL COLLATERAL
REGIONAL COUNSEL-MIDDLE
REGION
12973 N. Telecom Parkway
Temple Terrace, Florida 33637
813-558-1643