**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

WILLIE SETH CRAIN,

Petitioner,

v.

SECRETARY, DEPARTMENT OF CORRECTIONS, et al.,

Respondents.
_______________________________/

Case No. 8:26-cv-3503-KKM-LSG
Death Penalty Case
ACTIVE DEATH WARRANT
EXECUTION SCHEDULED FOR
December 10, 2026, at 6:00 p.m.

**RESPONSE TO EMERGENCY MOTION TO STAY EXECUTION**

Respondents, Secretary, Department of Corrections, et al., by and through the undersigned counsel, respond in opposition to Petitioner Willie Seth Crain's Emergency Motion to Stay Execution. (Doc. 4). Crain's request for a stay of his execution, which is scheduled for December 10, 2026, is premised on a 28 U.S.C. § 2254 petition for writ of habeas corpus that Crain filed with the stay motion. (Doc. 1). Importantly, however, this is Crain's second petition for federal habeas relief. His first such petition was denied by this Court more than four years ago. *See Crain v. Sec'y, Dep't of Corr.*, No. 8:12-cv-322, 2022 WL 20472602 (M.D. Fla. Sept. 30, 2022), *certificate of appealability denied*, No. 22-13693, 2023 WL 5005656 (11th Cir. Mar. 31, 2023), *cert. denied*, 144 S. Ct. 292 (2023). Moreover, Crain has neither sought nor received authorization

from the Eleventh Circuit to file a second or successive habeas petition. *See* 28 U.S.C. § 2244(b). Because Crain's newest § 2254 petition is unauthorized, in addition to being both untimely and facially without merit, his eleventh-hour request for a stay of execution must be denied.

## Relevant Facts and Procedural Background

The appalling facts of this case were recounted by this Court in its order denying Crain's previous habeas petition. In September 1998, Crain—who had previously been convicted of multiple felony counts of sexually abusing young children—abducted and murdered seven-year-old Amanda Brown. *See Crain*, 2022 WL 20472602, at *1-4, *17. Crain had recently befriended Amanda's mother, Kathryn Hartman, and had spent the night before her disappearance with Hartman and Amanda at their home. When Hartman woke up the next morning, Crain and Amanda were gone. *Id.* at *1-2. Although Amanda's body was never found, blood stains in Crain's bathroom and on his boxer shorts were matched to her DNA, and Crain (a 52-year-old fisherman and crabber) was seen on his boat early that morning carrying what appeared to be a rolled-up item of clothing. Crain had previously told another fisherman that he could "get rid of a body where no one could find it." *Id.* at *2-3.

A jury convicted Crain of first-degree murder (Count I) and kidnapping with intent to commit homicide (Count II). *Id.* at *4. The jury also unanimously recommended a death sentence. The trial court agreed and sentenced Crain to

death. *Id.* On direct appeal, the Florida Supreme Court affirmed Crain's first-degree murder conviction and death sentence. *Crain v. State*, 894 So. 2d 59, 78 (Fla. 2004). However, it ruled that there was insufficient evidence to support the jury's conviction of kidnapping with intent to commit homicide; therefore, it directed the trial court to reduce Count II to the lesser-included offense of false imprisonment on remand. *Id.* at 75-76.[1] Crain filed a petition with the United States Supreme Court for a writ of certiorari, which was denied on October 3, 2005. *Crain v. Florida*, 546 U.S. 829 (2005).

Crain thereafter filed a motion for postconviction relief in state circuit court pursuant to Florida Rule of Criminal Procedure 3.851. The motion was denied after an evidentiary hearing, and the Florida Supreme Court affirmed that decision on appeal. *See Crain v. State*, 78 So. 3d 1025 (Fla. 2011). Several months later, on February 15, 2012, Crain filed his initial § 2254 petition in this Court. While that petition was still pending, Crain filed a successive postconviction motion in state court seeking relief based on *Hurst v. Florida*, 577 U.S. 92 (2016). This Court stayed the habeas proceeding to allow Crain to pursue that claim. *Crain*, 2022 WL 20472602, at *5. The state postconviction

[1] Although the Florida Supreme Court found insufficient evidence to support Crain's conviction for kidnapping with intent to *commit homicide* (the offense specifically charged in Count II of the indictment), it agreed that there was sufficient evidence that Crain committed the offense of kidnapping with intent to *inflict bodily harm*. On that basis, it concluded that there was sufficient evidence to support a conviction for first-degree felony murder with the latter offense as the underlying felony. *See Crain*, 894 So. 2d at 73-76.

court and the Florida Supreme Court ultimately rejected the *Hurst* claim. *See Crain v. State*, 246 So. 3d 206 (Fla. 2018), *cert. denied*, 586 U.S. 1134 (2019). On September 30, 2022, this Court denied Crain's § 2254 petition as to all claims raised and denied a certificate of appealability. *See Crain*, 2022 WL 20472602, at *6-26. The Eleventh Circuit likewise denied a certificate of appealability, and the Supreme Court denied review of the Eleventh Circuit's decision on October 10, 2023. *See Crain*, 144 S. Ct. at 292.

On August 1, 2024, Crain filed a Motion to Correct Sentence in the trial court pursuant to Florida Rule of Criminal Procedure 3.800, pointing out that the trial court had never entered an amended judgment on Count II for false imprisonment pursuant to the Florida Supreme Court's instruction on direct appeal. Crain further argued that there was insufficient evidence to support his convictions on both counts and that, alternatively, the reduction of Count II entitled him to resentencing on Count I. (Doc. 1-2 at 203-38). The trial court granted the motion to the extent Crain sought a reduction of Count II to false imprisonment, but it rejected his other arguments as not cognizable under Rule 3.800, procedurally barred, and meritless. (Doc. 1-2 at 321-34).

On August 4, 2025, the trial court entered an amended judgment and sentence, which corrected Count II to false imprisonment and resentenced Crain on that count to five years' imprisonment. The amended judgment was entered *nunc pro tunc* to November 19, 1999, the date of the original judgment.

Crain then filed another Motion to Correct Sentence challenging the *nunc pro tunc* designation. (Doc. 1-2 at 339-47). The trial court denied the motion, stating: "[T]he Florida Supreme Court essentially found [Crain] should have initially been found guilty of false imprisonment, therefore, the Court finds its July 23, 2025, adjudication for false imprisonment and resentencing on count two was merely a ministerial manifestation of the Florida Supreme Court's directive. Consequently, the July 23, 2025, adjudication for false imprisonment and corresponding sentence should be *nunc pro tunc* to [Crain]'s original date of conviction and sentence on count two." (Doc. 1-2 at 358-59).

Crain appealed the trial court's rulings to the Florida Supreme Court. The Florida Supreme Court dismissed the appeal as moot on September 8, 2026. (Doc. 1-2 at 362) (citing *Casiano v. State*, 310 So. 3d 910, 913 (Fla. 2021) (stating that a sentence generally cannot be appealed after it has been fully served because any sentencing issue is moot)).

On November 10, 2026, Governor Ron DeSantis signed Crain's death warrant, scheduling his execution for December 10, 2026, at 6:00 p.m. On November 17, 2026, Crain filed the instant § 2254 petition and motion to stay execution in this Court. (Docs. 1, 4). The next day, this Court issued an order requiring Respondent to file a response addressing "whether a new judgment permits Crain to return to federal court at this juncture to present the grounds raised in his petition . . . [and]—regardless of procedural bars—whether Crain

has made a 'strong showing that he is likely to succeed on the merits' of his application to stay the execution." (Doc. 10 at 3).

As set forth below, Crain's habeas petition is not cognizable, and he is not entitled to a stay of execution.

## Argument

It is well-settled that a stay of execution is not granted as "a matter of course." *Hill v. McDonough*, 547 U.S. 573, 583-84 (2006). A stay is "an equitable remedy" and "equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Id.* at 584. Equity also requires this Court to consider "an inmate's attempt at manipulation." *Gomez v. U.S. Dist. Ct. for N. Dist. of Cal.*, 503 U.S. 653, 654 (1992). That includes "the extent to which the inmate has delayed unnecessarily in bringing the claim." *Walls v. Sec'y, Dep't of Corr.*, 161 F.4th 1281, 1284 (11th Cir. 2025) (quoting *Nelson v. Campbell*, 541 U.S. 637, 649-50 (2004)). Courts must "employ a 'strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.'" *Id.* (quoting *Nelson*, 541 U.S. at 650). Further, the Supreme Court has made clear that "[b]oth the State and the victims of crime have an important interest in the timely enforcement of a sentence." *Calderon v. Thompson*, 523 U.S. 538,

556 (1998). Accordingly, last-minute stays of execution should be "the extreme exception, not the norm." *Bucklew v. Precythe*, 587 U.S. 119, 150 (2019).

Crain must establish *at least* four elements to stay execution of his long-finalized death sentence: "(1) he has a substantial likelihood of success on the merits, (2) he will suffer irreparable injury unless the injunction issues, (3) the injunction would not substantially harm the other litigant, and (4) if issued, the injunction would not be adverse to the public interest." *Barwick v. Governor of Fla.*, 66 F.4th 896, 900 (11th Cir. 2023). Crain must satisfy "all" of these requirements before this Court may issue a stay. *See id.* (citing *Hill*, 547 U.S. at 584). The "first and most important question," however, is "whether he can demonstrate a substantial likelihood of success on the merits." *Id.* Here, as set forth below, Crain has no likelihood of success on the merits for numerous reasons; the second, third, and fourth stay factors likewise weigh against his stay request; and equity does not warrant a stay in light of Crain's unexplained *twenty-year* delay in seeking correction of Count II.

## I. Crain's Unauthorized, Untimely, and Facially Meritless Petition Has No Likelihood of Success on the Merits.

As to Crain's likelihood of success on the merits, his habeas petition first fails because it is his second § 2254 petition challenging his convictions and death sentence for the murder of Amanda Brown, and he neither sought not received authorization from the Eleventh Circuit to file it.

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a state prisoner seeking federal habeas relief may not file a second or successive habeas petition without first "mov[ing] in the appropriate court of appeals for an order authorizing the district court to consider the application." 28 U.S.C. § 2244(b)(3)(A); *see also Gonzalez v. Crosby*, 545 U.S. 524, 530 (2005); *In re Hill*, 715 F.3d 284, 290-91 (11th Cir. 2013). When a state prisoner files a second or successive habeas petition without complying with § 2244(b)(3)(A), the district court must dismiss the petition for lack of jurisdiction. *See Burton v. Stewart*, 549 U.S. 147, 156 (2007); *Tompkins v. Sec'y, Dept. of Corr.*, 557 F.3d 1257, 1259 (11th Cir. 2009).

Crain argues that his petition is not successive based on the amended judgment correcting his conviction and sentence on Count II. (Doc. 13 at 12-19). However, that argument is foreclosed by *Osbourne v. Secretary, Florida Department of Correction*s, 968 F.3d 1261 (11th Cir. 2020). In *Osbourne*, the Eleventh Circuit held that where, as here, an amended sentence was entered *nunc pro tunc* to the date of the original sentence, "under Florida law the . . . amended sentence related back to the date of the initial judgment and was not a 'new judgment' for purposes of § 2244." *Id.* at 1266-67. In other words, "there is no intervening new judgment here authorizing [Crain]'s confinement. Rather, [Crain] is still confined pursuant to the [1999] judgment." *Id.* at 1267.

"Consequently, [his] latest § 2254 [is] an unauthorized second or successive petition over which [this] [C]ourt lack[s] jurisdiction." *Id.*

Crain attempts to circumvent *Osbourne* by arguing that the trial court's use of the *nunc pro tunc* designation was improper. (Doc. 13 at 18) (asserting that the designation was "imposed contrary to how nunc pro tunc normally functions in Florida"). However, "the propriety of labeling a Florida judgment 'nunc pro tunc' is a matter of state law . . . ." *Osbourne*, 968 F.3d at 1266 n.4. "It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'" *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1355 (11th Cir. 2005) (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)). Therefore, this Court "cannot second-guess the state court's *nunc pro tunc* designation . . . ." *Cassidy v. Sec'y, Fla. Dep't of Corr.*, 119 F.4th 1336, 1342 (11th Cir. 2024). In any event, the trial court's designation of the amendment as *nunc pro tunc* to the date of the original judgment and sentence was correct. As the trial court explained, Crain "should have initially been found guilty of false imprisonment" in the original judgment, and the entry of the amended judgment and sentence "was merely a ministerial manifestation of the Florida Supreme Court's directive" in its 2004 direct appeal opinion. (Doc. 1-2 at 358-59). Accordingly, there is no "'new judgment' for purposes of § 2244," *Osbourne*, 968 F.3d at 1267, and Crain's petition must be dismissed for lack of jurisdiction.

The *nunc pro tunc* designation also renders Crain's new habeas petition untimely. Crain's new petition, like his original petition, is governed by AEDPA's one-year limitation period that "runs from 'the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.'" *Cassidy*, 119 F.4th at 1340 (quoting 28 U.S.C. § 2255(d)(1)(A)). Here, Crain's judgment became final when the United States Supreme Court denied certiorari review in his direct appeal on October 3, 2005. *See Crain*, 2022 WL 20472602, at *4. The AEDPA limitation period was tolled 339 days later by the filing of Crain's initial state postconviction motion on September 7, 2006. *Id.* at *5; 28 U.S.C. § 2244(d)(2). The initial postconviction proceeding concluded when the Florida Supreme Court issued its mandate on February 6, 2012. *See Crain v. Sec'y, Dep't of Corr.*, No. 8:12-cv-322, Doc. 1 at 26 (M.D. Fla. Feb. 15, 2012). From that date, then, Crain had 26 days to seek federal habeas relief under § 2244(d).

The Eleventh Circuit held in *Cassidy* that an amended judgment entered "*nunc pro tunc* to the date of [the] original judgment d[oes] not restart the federal statute of limitations."" 119 F.4th at 1342. Therefore, Crain's original March 2012 deadline for seeking federal habeas relief remains in effect, and his current petition is untimely by more than 14 years.

Thus, to answer this Court's first question, there is no "new judgment [that] permits Crain to return to federal court at this juncture to present the

grounds raised in his petition." (Doc. 10 at 3). For purposes of federal habeas review, Crain remains confined under the same judgment of conviction for first-degree murder and sentence of death that formed the basis for his previous federal habeas petition. His new petition is therefore unauthorized as second or successive under § 2244(b) and untimely under § 2244(d). *Osbourne*, 968 F.3d at 1266-42; *Cassidy*, 119 F.4th at 1340-42. For the same reasons, Crain has not "made a 'strong showing that he is likely to succeed on the merits' of his application to stay the execution." (Doc. 10 at 3).

Even if the habeas petition were cognizable, however, it would still fail on the merits for a myriad of reasons.

Ground One of the petition attempts to challenge the trial court's *nunc pro tunc* designation of the amended judgment and sentence. (Doc. 1 at 12-13). But as discussed, the propriety of the *nunc pro tunc* designation is a question of state law that a federal court cannot second-guess. *See Cassidy*, 119 F.4th at 1340 ("When a state court issues an amended judgment or sentence *nunc pro tunc*, our precedent requires us to accept that designation and refrain from evaluating whether it was proper under state law."). To the extent Crain is attempting to challenge the Florida Supreme Court's dismissal of his appeal from the amended judgment and sentence, the scope of the Florida Supreme Court's appellate jurisdiction is likewise purely a matter of state law. And "the views of the state's highest court with respect to state law are binding on the

federal courts." *Wainwright v. Goode*, 464 U.S. 78, 84 (1983). Moreover, even if either the trial court or the Florida Supreme Court had erred in making those decisions, it is axiomatic that "federal habeas relief does not lie for errors of state law." *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010). Therefore, Ground One fails to state any cognizable basis for federal habeas relief.

Ground Two attempts to challenge the sufficiency of the evidence supporting Crain's first-degree murder conviction. (Doc. 1 at 15-20). However, Crain previously raised the same claim in his first federal habeas petition, and this Court rejected it on the merits. *See Crain*, 2022 WL 20472602, at *20-21. AEDPA requires that "a claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed." 28 U.S.C. § 2244(b)(1).

Furthermore, even if Ground Two could be considered a new claim, it would still fail. Crain's specific argument is that he cannot be guilty of first-degree felony murder with the underlying felony of kidnapping because, according to Crain, it is possible that Amanda was already dead when he took her from her mother's house. (Doc. 1 at 17). But Crain raised that argument in his Rule 59(e) motion in his previous federal habeas proceeding, and this Court properly rejected the argument as procedurally defaulted. *See Crain v. Sec'y, Dep't of Corr.*, No. 8:12-cv-322, Doc. 146 (M.D. Fla. Nov. 25, 2022). Although Crain subsequently raised the argument in state court in his motion to correct

his sentence, the trial court found that the argument was not cognizable under Rule 3.800, among other defects. (Doc. 1-2 at 329). Thus, the argument remains procedurally defaulted in this Court. *See Davila v. Davis*, 582 U.S. 521, 527 (2017) ("[A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule.").

Finally, Crain's argument is meritless. As the Florida Supreme Court recognized, in this case, "the extraordinary unlikelihood that a seven-year-old child would voluntarily disappear from her sleeping mother's side in the middle of the night and remain alive but never be seen or heard from again is strong circumstantial evidence of her death." *Crain*, 894 So. 2d at 72. Moreover, "[f]rom the evidence of Crain's interest in Amanda, the fact that he was present when Amanda was last seen asleep in her mother's bed, Hartman's testimony that she slept through the night, and the neighbor's observations of Crain's truck, the jury could reasonably have inferred to the exclusion of all other hypotheses that Crain took Amanda from the trailer without the consent of her mother. This conduct establishes an unlawful confinement under the kidnapping statute." *Id.* at 73. As to Crain's current assertion that there were purportedly "no facts to support a finding that there was an abduction of Amanda while she was alive in her home or that Amanda left her home alive," (Doc. 1 at 17), his argument is refuted by "the DNA evidence indicating a

mixture of blood from Crain and Amanda found on the toilet seat and tissue in Crain's bathroom" and "the scratch and gouge marks on Crain's arms," which "are indicative of a struggle between Crain and Amanda." *Crain*, 894 So. 2d at 75. That evidence, as well as "Crain's oddly targeted bleaching of his bathroom in the middle of the night," *id.* at 72, support a finding that Crain murdered Amanda at his residence after he kidnapped her.

For all of the foregoing reasons, Crain's stay request must be denied based on his failure to meet the first stay prong alone.

## II. The Remaining Stay Factors Further Weigh Against a Stay of Crain's Long-Final Death Sentence.

In addition to Crain's successive habeas petition having no likelihood of success on the merits, his emergency stay motion fails under the remaining prongs governing stays of execution. *See Barwick*, 66 F.4th at 900. As to the second prong, the fact of the execution alone cannot satisfy the irreparable-harm requirement. The Eleventh Circuit has rejected the argument that the equities favor a stay because the inmate "will suffer irreparable harm if he is executed, whereas the state will only suffer the minimal inconvenience of having" the execution postponed. *Brooks v. Warden*, 810 F.3d 812, 825 (11th Cir. 2016). That is because, "as the Supreme Court has recognized, the [S]tate, the victim, and the victim's family also 'have an important interest in the timely enforcement of [Crain's] sentence." *Id.* (quoting *Hill*, 547 U.S. at 584).

Thus, Crain "must show how he will be irreparably injured by" his successive habeas petition not being heard on the merits, "not injured as a consequence of his original criminal conviction and sentence. The irreversible nature of the death penalty cannot, on its own, justify a stay." *Humphreys v. Comm'r, Georgia Dep't of Corr.*, 161 F.4th 1300, 1312 (11th Cir. 2025).

As to the third factor, a stay will substantially harm the State by interfering with its sovereign power to enforce its valid criminal judgments. *See In re Blodgett*, 502 U.S. 236, 239 (1992) (noting the concern that the State of Washington has "sustained severe prejudice" by the two-year stay of execution which "prevented Washington from exercising its sovereign power to enforce the criminal law"). As stated previously, the Supreme Court has highlighted the State's and the victims' important interests in the timely enforcement of the death sentence. *Bucklew*, 587 U.S. at 150. The people of Florida, as well as victims and their families, "deserve better" than the "excessive" delays that typically occur in capital cases. *Id.* at 149. The Eleventh Circuit has also noted the State's strong interest in its executions not being delayed. *See Brooks v. Warden*, 810 F.3d 812, 824 (11th Cir. 2016).

As to the fourth factor, it is not in the public interest to stay the execution. The Florida Constitution provides the victim's family members with a constitutional right for Crain's proceedings to be free from unreasonable delay, as well as a right to a prompt and final conclusion of his post-judgment

proceedings. Art. I, § 16(b)(10), Fla. Const. In this case, Crain's sufficiency-of-the-evidence arguments concerning his first-degree murder conviction were rejected by the Florida Supreme Court in its 2004 direct appeal opinion and by this Court in its 2022 order denying Crain's first federal habeas petition. *See Crain*, 894 So. 2d at 71-75; *Crain*, 2022 WL 20472602, at *20-21. It is against the public interest to stay Crain's execution merely to allow him to litigate the same arguments or variations of those arguments yet again.

## III. Equity Does Not Warrant a Stay in Light of Crain's Inexcusable Twenty-Year Delay in Seeking Correction of Count II and His Obvious Attempts at Manipulation.

Finally, the equities of this case strongly weigh against a stay. When reviewing a request for a stay of execution, this Court "must consider not only the likelihood of success on the merits and the relative harm to the parties, but also the extent to which the inmate has delayed unnecessarily in bringing the claim." *Walls*, 161 F.4th at 1285 (quoting *Nelson*, 541 U.S. at 649-50). An inmate's "inexcusable delay" in raising a claim is an "'*independently* adequate reason[]'" for denying a stay of execution. *Id.* (original emphasis) (quoting *Long v. Sec'y, Dep't of Corr.*, 924 F.3d 1171, 1176 (11th Cir. 2019)). "[A] stay of execution is an equitable remedy and all of the rules of equity apply." *Long*, 924 F.3d at 1176. And "[e]quity is not intended for those who sleep on their rights." *Jones v. United States*, 304 F.3d 1035, 1045 (11th Cir. 2002) (quoting *Fisher v. Johnson*, 174 F.3d 710, 715 (5th Cir. 1999)).

In this case, Crain's new habeas petition, and his accompanying request for a stay of execution, are premised on the amended judgment reducing his conviction on Count II to false imprisonment. But the Florida Supreme Court directed the trial court to make that correction in its 2004 direct appeal opinion. *See Crain*, 894 So. 2d at 76. Crain, however, waited until 2024—a full *twenty years*—before asking the trial court to make that correction. (Doc. 1-2 at 203-38). Crain does not even attempt to explain the reason for the delay. He could have easily filed the same motion at any time after his direct appeal concluded. Instead, Crain inexcusably waited until after his federal habeas proceeding concluded (in October 2023) to seek correction of Count II.

Crain's timing appears to be nothing more than an "attempt at manipulation." *Gomez*, 503 U.S. at 654. The only obvious reason for Crain to have waited before seeking correction of Count II is that he reasoned that, by doing so, he could obtain an amended judgment and get a second bite at the federal habeas apple. Relevant here, however, the Supreme Court has cautioned that federal habeas courts should be wary of attempts by capital petitioners to "avoid execution of the sentence of death . . . by dragging out indefinitely their federal habeas review." *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005). Crain's latest habeas petition is merely an attempt at further delay. Equity does not warrant a stay under these facts.

## Conclusion

Based on the foregoing, Crain's Emergency Motion to Stay Execution must be denied.

Respectfully submitted,

JAMES UTHMEIER
FLORIDA ATTORNEY GENERAL

/s/ *Rick A. Buchwalter*
RICK A. BUCHWALTER
Senior Assistant Attorney General
Florida Bar No. 0781975
rick.buchwalter@myfloridalegal.com

/s/ *Timothy A. Freeland*
TIMOTHY A. FREELAND
Special Counsel, Assistant Attorney General
Florida Bar No. 0539181
timothy.freeland@myfloridalegal.com

/s/ *Jonathan S. Tannen*
JONATHAN S. TANNEN
Senior Assistant Attorney General
Florida Bar No. 70842
jonathan.tannen@myfloridalegal.com

Office of the Attorney General
3507 E. Frontage Road, Suite 200
Tampa, Florida 33607-7013
Telephone: 813-287 7910
capapp@myfloridalegal.com

COUNSEL FOR RESPONDENTS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of November 2026, I

electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to the following: Melody Jacquay-Acosta, Colleen Monroe, and Chelsea Chitty, Assistants CCRC-M, Capital Collateral Regional Counsel-Middle Region, 12973 No. Telecom Parkway, Temple Terrace, Florida 33637, **jacquay@ccmr.state.fl.us**, **monroe@ccmr.state.fl.us**, **chitty@ccmr.state.fl.us**, **support@ccmr.state.fl.us**; and the Florida Supreme Court, Kendall Canova, Capital Appeals Clerk, 500 South Duval Street, Tallahassee, Florida 32399, **warrant@flcourts.org, canovak@flcourts.org**.

/s/ *Rick A. Buchwalter*
COUNSEL FOR RESPONDENTS